**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

Wanda Belvin,
               Plaintiff,

                               Case No.

v.

Equifax Information Services, LLC,
                 Defendant.
_____/

**PLAINTIFF'S COMPLAINT**

COMES NOW, Plaintiff, by and through counsel, and for her Complaint against Defendant, Equifax Information Services, LLC, respectfully alleges as follows:

## I.    INTRODUCTION

1. Plaintiff, Wanda Belvin, a Florida resident, brings this action under Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. (the "FCRA") against Defendant, Equifax Information Services LLC ("Equifax"), for violations of the Fair Credit Reporting Act 15 U.S.C. § 1681 et seq. which prohibits consumer reporting agencies from failing to conduct reasonable investigation with regards to completeness and accuracy and makes them liable under 15 U.S.C. § 1681(n) and 1681(o).

## II.    JURISDICTION AND VENUE

2.  This Court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3.  The Plaintiff is a natural person and legal resident of Bradenton, FL.

4.  Defendant conducts business in the state of Florida; therefore, personal jurisdiction is established.

5.  Venue is proper before this court pursuant to 28 U.S.C. § 1391(b) as Defendant conducts business in this district, communications, and a substantial part of the events or omissions giving rise to the claims herein occurred in Bradenton, FL.

## III.    PARTIES

6.  Plaintiff, Wanda Belvin, is a "consumer" as defined by 15 U.S.C. § 1681a(c). Plaintiff is a natural person who resides in the State of Florida.

7.  Defendant Equifax is a "consumer reporting agency" defined by 15 U.S.C. § 1681a(f).

8.  Equifax Information Services, LLC is a foreign limited liability company doing business at all relevant times in Florida that may be served with process by serving its registered agent for service of process, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301, USA, which service is hereby requested.

## IV.    FACTUAL BACKGROUND

### *Plaintiff's April 2026 Consumer Disclosure*

9. Plaintiff reasserts each of the preceding paragraphs as if set forth here in their entirety.

10. On or about April 2, 2026, Plaintiff requested a copy of her consumer credit disclosure from Equifax.

11. Pursuant to 15 U.S.C.  § 1618g(a), upon receipt of Plaintiff's request, Equifax was required to "clearly and accurately" disclose all information in Plaintiff's file at the time of her request, with the limited exception that her Social Security number could be truncated upon request.

12. Equifax provided an electronic copy of Plaintiff's Consumer Disclosure ("Equifax Disclosure") to her via annualcreditreport.com.

### *Equifax's Disclosure Was Not Complete, Clear, or Accurate*

### *Missing Original Creditors*

13. Despite a requirement to disclose all information in the credit file at the time of the request, Equifax's Disclosure omitted significant amounts of information contained in the credit file and refused to give this information to Plaintiff.

14. Equifax's Disclosure indicated that Plaintiff's credit file contained (30) thirty accounts classified as "Credit Accounts," see Exhibit 1.

15. Equifax's Disclosure stated: "This includes all types of credit accounts, such as revolving accounts, mortgage accounts, and any other installment loans or open lines of credit." *Id.*

16. Equifax's Disclosure indicated that Plaintiff's credit file contained an account being reported by Portfolio Recovery Assoc ("PRA").

17. PRA is *Debt Buyers* – a company whose primary purposes are the purchase and collection of debts which were originally owed to third parties.

18. As PRA does not lend to consumers, it is *never an Original Creditor*.

19. Despite this, when disclosing PRA's tradelines to Plaintiff, Equifax indicated that PRA was the *Original Creditor* of the accounts, omitting any reference to the *Original Creditor,* see Exhibit 1.

20. Despite being required to provide a full and complete disclosure of the information contained within its records, per 15 U.S.C. § 1681g(a), Equifax thus shifted the burden of disclosure and inquiry away from itself and onto Plaintiff.

21. Without having access to all the information in Plaintiff's file, Plaintiff is unable to determine if there is additional inaccurate/ incomplete information that Plaintiff needs to dispute had Plaintiff been given the full file as required by law.

### *Missing Account Numbers, Missing Account Information, and Payment History*

22. Making matters even more confusing for Plaintiff, Equifax omitted the full account numbers, missing account information, and payment history relating to the PRA tradeline, as well as the other (29) twenty-nine tradelines.

23. On information and belief, this data furnisher reported the full account numbers, complete account information, and complete payment history belonging to its respective accounts to Equifax, and this information was contained within Equifax's file regarding Plaintiff at the time of Plaintiff's request.

24. When Equifax produces and sells reports regarding Plaintiff to third parties, the full account numbers, complete account information, complete payment history, and names of the original creditors are included in its reports.

25. The accuracy of Equifax's reports to third parties demonstrates its ability to comply with 15 U.S.C. § 1681g(a) as well as the contents of its files.

26. Having a duty to disclose all of the information regarding the accounts in Plaintiff's file, Equifax breached its duty by failing to provide the account numbers, account information, payment history, and names of original

creditors, as such information is necessary for a consumer to be able to research and evaluate the information contained in their credit file.

27. Absent such information, a consumer is reduced to, at best, playing detective and, at worst, guessing as to whether the information in their report is accurate.

28. Equifax's disclosure contains a section entitled "Collections," stating: "If you fall behind on payments, the lender or creditor may transfer your account to a collection agency or sell it to a debt buyer. Like other negative information, a collection account can remain on your credit reports for up to seven years from the date you first miss a payment to the original lender or creditor."

29. PRA is debt buyers. Thus, Equifax should have placed these tradelines under the "Collections" header of Plaintiff's Disclosure rather than the "Credit Accounts" header.

30. Due to widespread systemic problems, Equifax's automated systems omit all but the last four digits of the account numbers, account information, and payment history reported by data furnishers.

31. Equifax knows of this error but, despite such knowledge, has yet to correct it.

32. The failure to disclose full account numbers violates the FCRA's requirement that a CRA disclose all information contained in a consumer's credit file clearly and accurately. See *Washington v.Equifax*, Case No. 3:19-cv-00154 (M.D. Tenn. Jun. 12, 2019) ("The plain language of the FCRA requires that the consumer reporting agency shall clearly and accurately disclose to the consumer '[a]ll information in the consumer's file at the time of the request.' 15 U.S.C. § 1681g. In the absence of binding authority stating that a truncated account number is a clear and accurate disclosure, the Court finds that Plaintiff has stated a plausible claim for a violation of Section 609 of the FCRA.")

33. The failure of an entity to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. See, e.g., *Havens Realty Corp. v.Coleman*, 455 U.S. 363 (1982), holding "alleged injury to (plaintiff's) statutorily created right to truthful housing information" was a cognizable injury in and of itself, regardless of whether the plaintiff actually hoped to reside in the defendant's housing complex; therefore "the Art. III requirement of injury in fact [was] satisfied.

34. The lack of accurate, full account numbers, missing account information, and missing payment history caused Plaintiff great frustration and

emotional distress when trying to understand her credit report and verify it against her own records.

35. Further, pursuant to a 2000 FTC Opinion Letter (Advisory Opinion to Darcy, June 30, 2000), "it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide 'accurate' (and perhaps not 'clear')disclosure of 'all information' in the file," see Exhibit 2.

36. Equifax's omission of the original creditor's name, full account numbers, account information, and payment history greatly decreases a consumer's ability to understand their consumer credit disclosure, identify the accounts, and compare those accounts with their own records.

37. The Credit Reporting Resource Guide, published by the Consumer Data Industry Association ("CDIA"), a trade association representing the CRAs, including Equifax, states that:

> "**The purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports.** Without the original creditor names, consumers may not know what the accounts represent." (**Emphasis original.**)

*SEE* EXHIBIT 3.

38. The *Credit Reporting Resource Guide* instructs debt collectors to "(r)eport the name of the company/creditor that originally opened the account for the consumer." Id.

39. On information and belief, PRA complied with the *Credit Reporting Resource Guide* and reported the names of the true original creditors of its reported accounts.

### *Prevalence of Equifax's Account Number Errors, Missing Account Information, and Missing Payment History*

40. On information and belief, Equifax's Disclosure to Plaintiff was generated using a template that extracts database information from a consumer's file and populates it into various pre-programmed fields on a consumer disclosure form.

41. On information and belief, this same template is used virtually *every time* a consumer requests their file from Equifax through www.annualcreditreport.com.

42. On information and belief, www.annualcreditreport.com is the location where the majority of consumers obtain their Equifax credit disclosure.

43. Consumer disclosures retrieved through annualcreditreport.com all exhibit the same missing account number, missing original creditor name, missing account information, and missing payment history errors.

44. Thus, *every* consumer with collection accounts appearing in the "Credit Accounts" section of their disclosure who requested their disclosure from Equifax through www.annualcreditreport.com since the template's use began, received a consumer disclosure with the same errors as Plaintiff.

45. Equifax's error has therefore likely affected thousands of consumers.

46. Equifax has known of the flaws in its systems, but has done nothing to fix them, despite the large number of consumers affected. *See, e.g., Justin Purdy vs. Equifax Information Services LLC,* case 8:19-cv-00217, M.D. FL, Jan. 28, 2019.

47. Equifax's knowing and repeated conduct warrants an award of ***punitive damages***.

48. Equifax's failure to disclose all of the information in the consumer's credit file in free annual disclosures is an intentional violation of 15 U.S.C. § 1681g(a), motivated by the Defendant's desire to avoid costs and increase profits.

49. Plaintiff has a right to a full and complete disclosure of the contents in their file upon demand, at least once a year and without charge, and that disclosure must be presented clearly and accurately pursuant to 15 U.S.C. § 1681j.

50. Equifax's failure to accurately, completely, and clearly disclose the information within its files regarding Plaintiff deprived her of her right.

## I.    EQUIFAX'S VIOLATIONS OF 15 U.S.C. § 1681g

51. Plaintiff reasserts each of the preceding paragraphs as if set forth here in their entirety.

52. Equifax violated 15 U.S.C. § 1681g(a)(1) when responding to Plaintiff's request for her consumer disclosure by failing to clearly and accurately disclose to Plaintiff, a *Consumer*, all of the information in her file at the time of the request. Specifically, Equifax disclosed one account reported by PRA without disclosing the full account number, the name of the *Original Creditor*, complete account information, and complete payment history, even though full account numbers, original creditor names, complete account information, and complete payment information were reported by the data furnishers.

53. Equifax knowingly provided inaccurate and incomplete information in Plaintiff disclosure, as it knew of these issues, which have been identified and disputed by other consumers for years.

54. Equifax is therefore liable to Plaintiff, pursuant to 15 U.S.C. § 1681n, for the greater of her actual damages and statutory damages of up to $1,000 per violation, plus attorneys' fees and costs.

55. Alternatively, Equifax's conduct was negligent, and Equifax is therefore liable to her, pursuant to 15 U.S.C. § 1681o, for actual damages, plus attorneys' fees and costs.

## II.   RIGHT TO AMEND

56. These allegations against Defendants are made acknowledging that this complaint is still in Investigation and Discovery. As further investigation and discovery are conducted, additional facts will surely be uncovered that may and probably will necessitate further, additional, and/or different allegations.

## III.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Wanda Belvin, respectfully requests that an award be entered in favor of Plaintiff and against Defendants, for all damages allowable, costs, expenses, attorney fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

## IV.   DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Respectfully submitted on May 6, 2026:


*/s/ Miranda Jackson*
Miranda Jackson, Esq.
FBN 0098593

Attorney for Plaintiff
Your Good Lawyers
501 N Magnolia Ave
Orlando, FL 32801
(407) 710-0130
civil@yourgoodlawyers.com

EXHIBIT 1

Prepared for:

**WANDA ELAINE BELVIN**



Date: March 18, 2026
Confirmation # 6077528436



### PORTFOLIO RECOVERY ASSOC - Closed

Riverside Commerce Center, Norfolk, VA  23502-4962 | (800) 772-1413          Date Reported: **02/24/2026** | Balance: **$665**
Account Number: **\*5222** | Owner: **Individual Account**                   Credit Limit: ▪ | High Credit: **$703**
Loan/Account Type: **Debt Buyer Account** | Status: ▪

Date Opened: **11/16/2024**              Date of 1st Delinquency: **08/10/2023**              Terms Frequency: ▪
Date of Last Activity: ▪                  Date Major Delinquency 1st Reported: **02/05/2026** Months Reviewed: **9**
Scheduled Payment Amount: ▪              Amount Past Due: **$665**                        Deferred Payment Start Date: ▪
Actual Payment Amount: ▪                 Charge Off Amount: ▪                             Balloon Payment Amount: ▪
Date of Last Payment: ▪                  Date Closed: ▪                                   Balloon Payment Date: ▪
Term Duration: ▪                          Activity Designator: ▪                           Narrative Code(s): **167, 057**

**Payment History**

| Year 2025 | Jan ▪ | Feb ▪ | Mar ▪ | Apr C | May C | Jun C | Jul C | Aug C | Sep C | Oct C | Nov C | Dec C |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| ✓ | Paid on Time | **30** | 30 Days Past Due | **60** | 60 Days Past Due | **90** | 90 Days Past Due | **120** | 120 Days Past Due |
|---|---|---|---|---|---|---|---|---|---|
| **150** | 150 Days Past Due | **180** | 180 Days Past Due | **V** | Voluntary Surrender | **F** | Foreclosure | **C** | Collection Account |
| **CO** | Charge Off | **B** | Included in Bankruptcy | **R** | Repossession | **TN** | Too New to Rate | ▪ | No Data Available |

**24 Month History**

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Last Payment Date | Past Due Amount | High Credit | Credit Limit | Narrative Codes |
|---|---|---|---|---|---|---|---|---|
| 12/25 | $665 | ▪ | ▪ | ▪ | ▪ | $703 | ▪ | ▪ |
| 11/25 | $665 | ▪ | ▪ | ▪ | ▪ | $703 | ▪ | ▪ |
| 10/25 | $665 | ▪ | ▪ | ▪ | ▪ | $703 | ▪ | ▪ |
| 09/25 | $665 | ▪ | ▪ | ▪ | ▪ | $703 | ▪ | ▪ |
| 08/25 | $665 | ▪ | ▪ | ▪ | ▪ | $703 | ▪ | ▪ |
| 07/25 | $703 | ▪ | ▪ | ▪ | ▪ | $703 | ▪ | ▪ |
| 06/25 | $703 | ▪ | ▪ | ▪ | ▪ | $703 | ▪ | ▪ |
| 05/25 | $703 | ▪ | ▪ | ▪ | ▪ | $703 | ▪ | ▪ |
| 04/25 | $703 | ▪ | ▪ | ▪ | ▪ | $703 | ▪ | ▪ |

| **Narrative Code** | **Narrative Code Description** |
|---|---|
| **057** | Collection Account |
| **167** | Consumer Disputes After Resolution |

EXHIBIT 2



**FEDERAL TRADE COMMISSION**
PROTECTING AMERICA'S CONSUMERS

/////////////////////

# Advisory Opinion to Darcy (06-30-00)

June 30, 2000

Denise A. Darcy, Esq.
Asst. General Counsel
TRANS UNION
555 West Adams Street
Chicago, Illinois 60661

Dear Ms. Darcy:

This responds to your letter dated concerning whether the Fair Credit Reporting Act ("FCRA") allows Trans Union or another consumer reporting agency ("CRA"), for security purposes, to "truncate, scramble or mask the account number and social security number" when making file disclosures to consumers. You report that such a procedure has been recommended to you by a consumer who was recently the victim of account takeover fraud by a perpetrator who fraudulently procured the individual's Trans Union file by impersonating the consumer. You state: "While some creditors truncate or scramble the data before they supply it to us, not all do; therefore, many of the account numbers on our file are complete and accurate, and that is what we disclose to the consumer."

Section 609(a)(1) of the FCRA states that CRAs, including major credit bureaus such as Trans Union, "shall, upon request (by a consumer), clearly and accurately disclose to the consumer . . . *All information* in the consumer's file at the time of the request" (emphasis added). If the "information in the consumer's file at the time of the request" includes account and social security numbers, the provision thus normally requires that the CRA "clearly and accurately" include such items in its disclosure to consumers. However, because the trigger for a file disclosure is a "request" by a consumer, a CRA may allow consumers (such as the individual in your letter) to choose truncation or other security measures in their own file disclosure. In other words, although Section 609 provides consumers with a right to *all information* in the file, a CRA may provide a method for the consumer to ask for less than all information and then comply with that "request" when it makes the disclosure.

In sum, it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 because it does not provide "accurate" (and perhaps not "clear") disclosure of "all information" in the file. However, if a consumer's "request" for a file disclosure is framed so as to allow some items in the file to be abbreviated or revised in that fashion, a CRA making such a disclosure would comply with Section 609.

The opinions set forth in this informal staff letter are not binding on the Commission.

Sincerely yours,

Clarke W. Brinckerhoff

PLAINTIFF'S COMPLAINT                                                                 15

EXHIBIT 3

## Field Definitions

### K1 Segment
### Original Creditor Name

| FIELD | FIELD NAME & DESCRIPTION | 426 and 366 FORMATS | | |
|---|---|---|---|---|
| | | Length | Position | Recording Technique |
| 2 | **Original Creditor Name** | 30 | 3-32 | AN |

2 — **Original Creditor Name**

This field is required and the content is dependent on the type of reporter.

Collection Agencies: Report the name of the company/creditor, including any partnering affinity name[1], that originally opened the account for the consumer, even if the account had been turned over to multiple collection agencies.

Debt Buyers: Report the name of the company/creditor, including any partnering affinity name[1], that originally opened the account for the consumer, even if the account had been sold multiple times to different debt buyers. Refer to the K2 Segment for "purchased from" information.

Companies Reporting Returned Checks: Report the name of the payee; i.e., name of company to which the check was written. Refer to Frequently Asked Question 15 for additional guidelines on reporting returned checks.

Student Loan Guarantors/U.S. Department of Education: Report the name of the original student loan lender.

U.S. Treasury: Report the name of the government agency that is the original creditor.

One of the following three options should be used when reporting a creditor's name that would reveal sensitive information about the consumer.

1. Report the name of the institution, but do not include reference to the type of service. For example, use the hospital name without identifying that it was the psychiatric unit that provided care. If a hospital's name reveals sensitive information, abbreviate the name.

2. Use the corporate name if it is different from the commercial name of a mental institution or drug rehabilitation center.

3. Do not report the account if either of the above two options would not sufficiently protect the consumer's privacy.

**Note: Encoded information is not acceptable in this field.**

(continued)

---

[1] The Affinity Name further identifies or provides linkage detail for the relationship of the original creditor to any connecting or supporting entities (e.g., ABC BANK THE HOME STORE).

4-40        CREDIT REPORTING RESOURCE GUIDE®
Copyright 2024 © Consumer Data Industry Association
[ Return to Table of Contents ]

PLAINTIFF'S COMPLAINT                                                    16